Mr. Wecker, we're ready to hear it Good morning, Your Honors, and may it please the Court. This case involves two means plus function claims and whether sufficient structure is provided in the specification. The first is, for short, means for mounting. This is a software means, so it's undisputed that the specification needs to disclose the algorithm for which it provides the structure for that function. In this case, there's a very simple two-step algorithm that's disclosed in the specification. Step one is that a data structure is set up or created. That data structure is called in the claims a super application interface data structure. The preferred embodiment described extensively in the specification is the invention in connection with a Unix operating system in which the super application interface data structure is called the MFS underscore VFS. You know, it would help me if maybe you could hone in on, I mean, take the first term. We're dealing with two separate terms and two separate claims, so we have to deal with both of those issues, right? So can you tell us where the district court went wrong in concluding that there was not sufficient structure in the means for mounting? I mean, where in his analysis did he go astray? Well, so the basic conclusion that the court reached was that all of the description in the specification described a result or an outcome and was not describing how to mount the two file systems so that they can both be mounted. And if you go through his analysis pointing out, taking bits and pieces and saying, oh, this is a result of rather than structure, he missed the critical language in the patent that says the way the mount protocol operates is to set up data structures and set up this particular data structure. Why don't you tell us where that language is? Okay, at APX 44, this is one example of it. It's a couple of times in the specification, but column 11, lines 43 to 45. Where it says the MFS mount operation sets up the data structure? Right, sets up the data structure. And that data structure is the one I was describing. There is no dispute in this case that that's a well-specified data structure. The defendant, IBM, asked the court to rule that that term itself was indefinite, and the court refused to do that, gave it a construction, explained that the specification fully sets out what that data structure consists of, how it operates. It's essentially a structure that inherits the data structures of the two underlying file systems. And what's the second step? Because you said that was the first step of the algorithm. Yeah. Where's the second step? The second step is populating that data structure. That's where you inherit the data structures of the two underlying file systems. So both of those are in that three-line sentence on column 11, the MFS mount operation sets up the data structure, MFS underscore FSS, to contain the VFS data structures of these two file system structures. That's where there's a meta-layer or super-layer, and it incorporates or inherits the contents of the data structures for each of the file systems. That's the algorithm that's set out here. Then the specification goes beyond that algorithm and actually provides sample code. Above that line, column 11, lines 5 to 15, is actual code for the MFS underscore VFS data structure. And you see that it incorporates the asterisks that are indicating pointers. It points to the VFS file structures of the X and Y file systems. And that's how they... How about the mechanism for managing? Okay. The second claim term is the mechanism for managing. What the claim describes is that the super-application interface data structure provides this mechanism for managing. Again, there was dispute about whether that super-application interface data structure was definite or not. The court ruled it was. That, in this case, is in the preferred embodiment called the M-node structure. And again, there's code provided in the specification about what the M-node structure looks like. And that follows a very simple algorithm. Again, two-step. First, any file operation that, say, your Word application is asking for, I've just hit save. I want to save the file. And where is the structure in the specification? So, one place. This is multiple times. And this application provides multiple descriptions of these algorithms that are central to the invention. So, at column 13, line 12, all file access requests, open, read, write, seek, close, et cetera, are directed to the V-node operation of the V-node of the virtual directory of the mirror file system. That's the M-node data structure. When the V-node operation, for example, open operation, for an open request, first gets the M-node from the private data field. And then that M-node finds the operation on both of the V-nodes of the two directories of the two underlying file systems. So, as I've stated in the brief, the algorithm is a simple one. When a file operation is sent to the mirror file system, it's intercepted by the data structure of the invention, which then the response to this portion of the disclosure. As I understand what it is, it's that this just tells you how to do the file access request for open, but it doesn't give the algorithm for all the other operations like read, write, seek, close, et cetera. So, how do you respond to that? So, if you look further down underneath the code example for open, the specification says the same procedure is followed for all the other operations. So, there's two possibilities here. In a write or update context, you have to send it to both of the underlying file systems. For read, you only have to grab the file from one of them. But that's all explained in the specification. And by saying that it performs the identical operations and the same parameters on both copies, it's again reiterating that all the managing function does is accept the file operation from an application and direct it to both of the for read or other operations. But the point is that they're being sent to both. Right, in the same manner. So, Twin Peaks expert took this code example for open, it's in column 13, and rewrote it for a number of other operations, including write. And it's a matter of just almost identical wording, but using the word write instead of open. Now, there's some different arguments you have to use because the operation needs different information, but those are all specified in the file systems interface structure. Those are things that, for interoperability purposes, the whole computer science world needs to be able to understand and implement. The judge had it absolutely wrong when he said that this specification doesn't lay out the arguments that are necessary. Those arguments are all standard in Unix and in file systems. I think what his point, if I remember correctly, his point was that that confuses enablement or understanding of what one of those here on the art would understand as compared to what is the corresponding structure disclosed in the specification. There are two different questions. Yeah, so the structure disclosed in the all operations, and an example given in the open context of actual code written. And the issue that came up in the Markman hearing related to a lock. And there was no evidence in the record whether the lock function operated like the open or read or write operations. And the specification explains how you handle that. That's in column 14. And so the district court essentially got... Where in particular in column 14 are you directing us? Excuse me? I'm sorry, where in column 14 could you give me... So 14 lines 20 to 35 explain an unusual lock that could be used in connection with the invention. And how the most of what it's explaining is how that lock ends up being sent to both of the file systems intercepted at the from the application and distributed to both of the applications. But there's a little twist because you have to deal with timing in that you need both of the locks on both file systems at the same time. And it's explained how you do that in that column. And so... You're well into your rebuttal, so why don't you just switch gears and listen to the other side. Good morning, your honors. Andrew Bramhall for IBM, and may it please the court. We're here today because Twin Peaks has not paid the price, the acknowledged price, for means plus function claiming with respect to these two limitations. The district court correctly determined this after a thorough analysis of the issues and should be affirmed. I'll start with means for mounting, and in particular I wanted to start with one of the comments that Mr. Wecker made, which was there's no dispute about the sufficiency of the disclosure of the data structure, in column 11, line 5, down to about line 14. Now, if you look at this data structure, you can actually see there are some lines written out here, but at the bottom it says other fields, and it has ellipses. And we have testimony in the record from Twin Peaks' experts saying that that's omitted code. In fact, there is a significant amount of code left out of this data structure. So there is a dispute whether that's a sufficient disclosure. But more importantly, this data structure is a result of the function. It's not an algorithm for how to perform the function exactly as the district court determined. This is a disclosure of an outcome, and you know that because, for example, at line, column 11, line 15, you see a reference to after a file system represented by a directory is mounted, these two file systems are linked together and become a mirroring pair. Essentially what that's saying is you create the virtual file system by doing the mounting. So the result of the mounting is actually the virtual file system and this MFS VFS structure. Can you tell us what sort of structure should have been disclosed in order to satisfy the mounting operation? Absolutely, Your Honor. So obviously code is not required. So it could have been described in prose. However, there's no description of the new approach for mounting. So what the patentee could have done is explained here's how you mount according to this claim. This is how you do the MFS mounting protocol. And importantly, it's a new approach to mounting. It's not the conventional approach. So they could have explained you mount by either with code, for example, saying this is the code you would use. Now there is a lot of code in here. That's some code that's omitted. Or the patentee could have explained generally here's what you do, here's how you differentiate. Why is it enough to say mounting is setting up the data structure? Why is that not enough? Because all that's saying is mount, that's describing the result. That's saying it's like in Blackboard where there was an access control manager. So the function at issue was means for accessing. And the patentee pointed to this thing called the access control manager as the structure. But the disclosure said the access control manager creates the access control list. That was the only disclosure. So there was a black box structure and then a result. And that was the disclosure. And it was found to be insufficient. And our submission to you, is that that's what's happening here. Essentially it's saying you mount, you set up data structures, and all that's telling you is when you mount, here's what results. And actually in Twin Peaks reply brief, they said here, this is at page five, here where the algorithm consists of the creation of a series of data structures, describing the resulting structures may be in fact the only way to adequately describe the algorithm. So he's admitting there that what the data structures are, are the result. And the result is insufficient when you have to disclose an algorithm for how to perform the function. This is similar to the aristocrat case, the function media case, where there was no disclosure of how to perform the function, but there was disclosure of an outcome or result and that was insufficient. Are there different ways to mount different data structures? Or is there, your position is that the mounting here would be something different than just setting up the data structure. It's not the data structure itself that's the mounting operator. Exactly. What I can't understand from your argument is exactly what mounting would entail then. Maybe you don't know the answer because you can't tell from the specification, but can you just go one level deeper and tell me what you think the mounting entails? Yeah, maybe I can explain it this way. There's a conventional Unix mounting. When you conventionally do a Unix mounting and you do a second mount, you lose access to the first mounted file system. So you go from one to two, but you lose the first one. The MFS mounting, this is actually one of the alleged points of novelty here. In fact, it's called the crux of the invention by the patentee. You have the first mounted file system and a second. And when you create the second, you don't lose the first. So what you would do is somehow need to modify the standard Unix mounting so you don't lose the first. But we don't know how to do that because it's not disclosed. I think you're getting it. Excuse me for taking a minute to get there. So essentially what we have here, because there's no disclosure of how to perform the function, you essentially have pure functional claiming. And that's not permitted. So if there are no other questions, I'll move to the mechanism for managing. So here, what TwinPeaks is essentially doing now is saying the managing function is simply routing or directing these operations from the top level to the bottom level. But it's not that simple. We've always been under the impression that there was no dispute that for the structure here, you would need to have disclosure of the MFS operations. These specific operations created for the MFS, which as he admits, are modified from the standard versions in Unix, which we don't dispute are known. So you have this collection of MFS operations which need to be not only moved from the top level to the bottom level, but modified to do that. And then also modified to do other things like lock and back off. And what the issue is here is one, most of those operations aren't disclosed. Second, we don't know how many of them are required for managing. And third, the description that it gives of these particular functions, it does tell you how to do one of them, open. It says if you take open from the Unix code, you modify it in this way, and it will work in the MFS. But then it says, and this is line 13, excuse me, column 13, line 52 to about 56, it says, well, all the other vnode operations for the MFS, these are the operations that are involved in managing, all of them, and it actually doesn't say all of them, it says et cetera, so it leaves some out. Follow the same procedure as described in MFS open to perform the same identical operations with the same parameters on both copies of the mirroring pair. But the very next section shows that that's not what you do. You have to modify some of them to go to two copies, some of them to go to one copy. And then as you go further down the specification to column 14, now it's telling you, well, you have to go even further than that. You have to modify the write, the special MFS mirror file system write operation, so that you have this complex locking mechanism, which itself includes a back off, back off algorithm. So it's not as simple as simply saying, oh, it either goes to one copy or two. You have to modify these various operations to do different things, and we just don't know how you modify the rest of them because they're not disclosed. So you have this massive omission of structure, and you therefore have a partial but inadequate algorithm for this One thing you said that caught my attention that I wasn't sure I agreed with was you said it doesn't say all others, it just says read, write, etc. But it does start, that sentence you refer to, which is in line 52, does start with all. Yeah, I misspoke. What I meant to say is it says all other VNOD operations, but it doesn't list them because it's omitting them deliberately. And that's the problem that we have, Your Honor, is we don't even know which of these MFS operations are involved in because there's no disclosure. And we'd submit that because this is means plus function claiming, you need to disclose those various operations, tell us which ones they are, and either in prose or code, tell us how they would operate, how to perform them. And we just simply don't have that. And what we have instead is instructions that actually don't, they don't help you because as we saw, TwinPeaks Expert provided a supplemental declaration, purported to provide code for write according to the patent, and left out this crucial component, the locking mechanism. He left it out completely. So that's, and that's just one example. For all the other MFS operations, and again we don't know what they are because they're not disclosed, who knows what modifications would need to be made. And if you follow the instructions of the patent, like TwinPeaks Expert did, you end up at the wrong place. And so in a sense what you have here is, you know, either an incomplete template for how to program the rest of these operations, or you have an inoperative algorithm altogether, like you had in the media rights case. It just simply didn't work. The code he put together, following the patent, didn't do what the patent says. So ultimately it's not as simple as the function that he's now saying is, you know, simply routing or directing. We've always understood that ensuring the data coherency and consistency, as in column 14, line 19, down to 36, with the locking mechanism. When I asked their expert at his deposition what the corresponding structure was, he actually identified column 14, line 37, and down, which is this failover and recovery portion. That's not merely directing or routing. That's, you know, ensuring that there's a failover and recovery. So it's not just routing or directing. Do I understand correctly your opponent's position that the locking is not a required operation? Is that what their position is? So, yeah, it's not, I think, it's not 100% clear to me, Your Honor. I think what he's saying is, one, there's a disclosure of it, and two, you wouldn't need it because it'd just be the basic approach anyway. But, although I think that's in the brief, but as we heard today, he's saying this is sort of a unique procedure. And, you know, query why this was left out of the expert's declaration. Was it because he just overlooked it? Or because you don't have enough details here to put it in the code? We just don't know. So, let me just point out one thing. I think I got ahead of myself. Just like with the means for mounting, this M-node structure and management of these two file systems, it's another point of novelty. So you can't just fill in the gaps with, well, you can't fill in the gaps anyway, but you can't even flesh it out with the testimony of one of our initials in the art, because this is something that's brand new. So you have to provide disclosure of it. So, unless there are any other questions. Thank you. Just three quick points. One, counsel argues that it's not clear why Mr. Bernstein left out the locking issue from his declaration and his testimony. And the answer is quite apparent. They didn't raise it. Their expert raised an issue that said, oh, open is a fundamental command. So is write, read, and close. So, Mr. Bernstein, reading that declaration, wrote code for write, read, close. The issue of locking didn't come up until the Markman hearing. We were before the judge and counsel. But doesn't the specification say that the locking mechanism is needed for the operation? I mean, it refers specifically to the write operation, so why? So there are embodiments in the specification that don't require the lock. I pointed out in the brief, there's circumstances where the remote file system is only being used by one person. I'm writing my Word document, it's saving to both my hard drive and a remote location. But there's nobody else who has any access to my system. So I don't have to worry about the two file systems getting out of sync. In that case, you don't need this particular kind of lock operation. But more important... Does the patent say that? The patent? Patent specification, does it explain that? I think in my brief, I explain why that's the case. And one skilled in the art would certainly read the patent that way. It doesn't expressly say the lock isn't needed in that circumstance. But it also is clear from the specification that the lock is separate. And it's a different idea, and it got incorporated into Claim 6 because it was a different idea. It didn't need to be in all systems. But more important, the specification is where he's getting his information about the lock. There is disclosure. The procedure by which you handle the lock is provided in the specification. And so the managing function is fully specified for one who is interested in implementing that operation. You said you had three points. I think you only covered one, but your time is up. So I'm going to give you a minute for the other two. Okay. Point two, the question about mounting and setting up data structures, they are the same. That's all there is to mounting. When you mount a file system on a computer system and the operating system, and you direct it to mount on a particular directory, the system does the setting up of the data structures. That's all it is. It's getting ready for these operations that might occur. So the answer is clearly, if you read the specification and understand it, that's how you mount, is by setting up data structures. And the invention here is a particular set of data structures which link and mirror two file systems, thus overcoming the problem in conventional file systems. The third point is, counsel was describing how, for the mechanism managing, there's more than just this directing function, that it gets modified. No, it doesn't get modified. Those operations are set forth in Unix. And Unix is a preferred embodiment here. There are operations, if we had specified in the specification 30 or 40 operations, they'd probably be saying, well, you didn't specify for the Windows system. There's a limit. What was specified here was what was necessary to understand the invention, understand the scope of the invention, and implement it. I thank you. We thank both sides and the case is submitted.